**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

David James Szymanski,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-11-1976-PHX-FJM (JFM)

**Report & Recommendation On Petition For Writ Of Habeas Corpus**

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Douglas, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 11, 2011 (Doc. 1).   On January 24, 2012, Respondents filed their Response (Doc. 10).   Petitioner has not filed a Reply.

The Petitioner's Petition is now ripe for consideration.   Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

The Indictment alleged that on April 7, 2005, Petitioner engaged in assaults with a knife on Elizabeth Yost, Dustin Magnuson, and Darren Shuck, disturbing the peace, and property damage to the home of Elisabeth Yost.  (Exhibit A, Counts 4, 5, 6, 8, and 9.)

The prosecution alleged that Petitioner's flight from police in the aftermath, led to a fatal car collision. At Petitioner's change of plea, defense counsel offered the following

1

statement of factual basis concerning the collision :

> MR. CANTOR:  Yes, your Honor.  At the date, time and place stated in the indictment, my client entered the 101 Freeway travelling the wrong way on the exit ramp.  It was marked.  It was at nighttime.  He travelled approximately four-and-a-half miles.  Several vehicles, three to be exact, swerved to miss him.  A fourth vehicle collided.  Subsequently, the driver of that vehicle was killed, and the two passengers were seriously physically injured.  My client had a blood alcohol of approximately 1.45, and also there was cocaine in his system.

(Exhibit Q, R.T. 8/7/07 at 12.) (Exhibits to the Answer, Doc. 10, are referenced herein as "Exhibit ___.")  The prosecution attempted to add a reference to Petitioner having been under pursuit by police at the time of the accident.  Defense counsel indicated there was no admission on that point.  (*Id.* at 12-14.)


**B. PROCEEDINGS AT TRIAL**

On April 25, 2005, Petitioner was indicted in Maricopa County Superior Court on one count of first degree murder, six counts of aggravated assault, and counts of criminal damage, disorderly conduct, and three counts of aggravated driving under the influence. (Exhibit A.)  The state subsequently filed allegations of intent to seek the death penalty. (Exhibit B.)

Petitioner proceeded through three different trial counsels.  He was initially represented by Jeffrey Force.  (Petition, Doc. 1 at physical page 6.) He was then represented by Randall Craig from July, 2005 until November, 2006.  From then through sentencing, he was represented by David Cantor.  (Exhibit S, R.T. 11/25/08 at 16, 26.)

On or about August 6, 2007, Petitioner entered into a written Plea Agreement (Exhibit C), wherein he agreed to plead guilty to an amended count of second degree murder, and two amended counts of aggravated assault. The Agreement further stipulated that Petitioner was to receive a sentence of 16 to 22 years in prison, followed by either supervised probation or additional 7 year prison terms on each of the aggravated vehicular assault counts.  The remaining counts, including those from the knife assaults and property damage at the Yost residence, were to be dismissed.  In

addition, Petitioner agreed to "judicial fact finding by preponderance of the evidence as to any aspect or enhancement of sentence." (*Id.* at 3.)

On August 7, 20007, Petitioner entered a guilty plea pursuant to the terms of the written plea agreement.  (Exhibit D, M.E. 8/7/7.)  Following a colloquy with Petitioner, wherein Petitioner asserted *inter alia* understanding the plea agreement, having no questions about it, and having not been forced or threatened in any way to make the agreement, the trial court found that Petitioner's plea was "knowingly, intelligently and voluntarily" made.  (Exhibit Q, R.T. 8/7/07 at 3-5, 13.)

On October 12, 2007, Petitioner appeared for sentencing.  At the hearing, the prosecution argued for increased sentencing based in part upon the assaults and criminal damage at the Yost residence.  (Exhibit R, R.T. 10/12/07 at 51-52.)  Petitioner had disputed the allegations and argued that his actions were in self-defense.  (*Id.* at  43.)

Petitioner was sentenced to an aggravated term of 22 years on the second degree murder, and to consecutive seven year terms of probation on each of the aggravated vehicular assault counts, the latter to be concurrent to each other.  (Exhibit E, Sentence.)


## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner did not file a direct appeal.  (Petition, Doc. 1 at 2.)


## D.  PROCEEDINGS ON POST-CONVICTION RELIEF

On November 1, 2007, Petitioner filed a Notice of Post-Conviction Relief (Exhibit F).  Counsel was appointed, but subsequently filed a notice of completion of review, and motion for extension of time for Petitioner to file a *pro per*  PCR petition. The motion was granted, and counsel was ordered to remain in an advisory capacity. (Exhibit P, M.E. 5/14/08.)

On June 28, 2005, Petitioner filed his *pro per*  Petition for Post-Conviction Relief (Exhibit G).   The PCR court summarily dismissed as unsupported all claims but Petitioner's claim of ineffective assistance of counsel Craig based upon counsel's alleged

wrong advice on the lesser included offenses. The court set an evidentiary hearing on the sole remaining claim. (Exhibit H, M.E. 11/4/08.)

At the hearing, Petitioner presented his own testimony (Exhibit S, R.T. 11/25/08 at 9-22), and the state presented the testimony of trial attorney Randall Craig (*id.* at 23-32). The PCR court then denied the remaining claim and dismissed the petition. (Exhibit I, M.E. 11/25/08.)

Petitioner then filed a Petition for Review (Exhibit J), raising 10 claims. On February 8, 2010, the Arizona Court of Appeals summarily denied review (Exhibit K).

Petitioner then filed a Petition for Review by the Arizona Supreme Court (Exhibit L), which was summarily denied on July 7, 2010.

Petitioner then filed on November 3, 2010 (after two applications to extend the time), a Petition for Writ of Certiorari with the U.S. Supreme Court (Exhibit N). On January 10, 2011, the Court denied the petition (Exhibit O).

## E. PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 10, 2011 (Doc. 1). Petitioner's Petition asserts the following grounds for relief:

> (1) Petitioner's trial counsel was ineffective for failing to remand the charges against Plaintiff to the grand jury;
> (2) The state suppressed evidence in violation of Petitioner's constitutional rights;
> (3) The state used perjured testimony and engaged in prosecutorial misconduct in violation of the Petitioner's constitutional rights;
> (4) Petitioner's trial counsel was ineffective because he failed to conduct any witness interviews;
> (5) Petitioner's trial counsel was ineffective because he failed to obtain psychological testing for Petitioner's mental illness;
> (6) Petitioner's trial counsel was ineffective in informing Petitioner about the consequences of signing a plea bargain;
> (7) The state unlawfully induced a guilty plea from Petitioner;
> (8) Petitioner's right to be free from self-incrimination was violated; and

4

(9) Petitioner's conviction was obtained through prosecutorial misconduct and Petitioner's sentencing was unlawful.

(Order 10/31/11 at 3.)

**Response** - On January 24, 2012, Respondents filed their Response ("Answer") (Doc. 10).  Respondents argue that Grounds 1, 2 and 8 were procedurally barred on independent and adequate state grounds, Grounds 2, 3, 7 and 9 were not fairly presented to the state courts and are procedurally defaulted, and that Grounds 4, 5, and 6 are without merit.

**Reply** – In the service Order, the Court provided that "Petitioner may file a reply within 30 days from the date of service of the answer." (Order 10/31/11, Doc. 3 at 3.) Petitioner has not filed a reply, and the time to do so has run.

### III. APPLICATION OF LAW TO FACTS

### A.  TIMELINESS

Respondents make no argument that the Petition is untimely.   A petitioner generally has one year from the conclusion of direct appeal to file a federal habeas petition, and that one year is tolled while state post-conviction proceedings (but not federal proceedings) are pending.

Petitioner's sentence was entered October 12, 2007.  His PCR proceeding was pending from his November 1, 2007 PCR Notice (Exhibit F) until January 10, 2011 when the U.S. Supreme Court denied certiorari review (Exhibit O).  Petitioner's instant Petition was filed October 10, 2011.

The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).    For an Arizona noncapital pleading defendant, the conviction becomes "final" at the conclusion of the first "of-right" post-conviction proceeding under Rule 32. "Arizona's Rule 32 of-right proceeding for plea-convicted defendants is a form of direct review within the

meaning of 28 U.S.C. § 2244(d)(1)(A)." *Summers v. Schriro,* 481 F.3d 710, 717 (9th Cir. 2007). "To bring an of-right proceeding under Rule 32, a plea-convicted defendant must provide to the Arizona Superior Court, within 90 days of conviction and sentencing in that court, notice of his or her intent to file a Petition for Post-Conviction Review." *Id.* at 715 (citing Ariz. R.Crim. P. 32.4(a)).

Moreover, it is well established in the Ninth Circuit that for purposes of 28 U.S.C. § 2244, "direct review" includes the period within which a petition for a writ of certiorari from the United States Supreme Court is pending. *See Bowen v. Roe*, 188 F.3d 1157, 1158 (9th Cir. 1999).

Petitioner filed his first PCR proceeding within 20 days of his sentence. As a pleading defendant, that constituted an "of-right" proceeding, and thus was a form of direct review. That proceeding remained pending until January 10, 2011, when the U.S. Supreme Court denied certiorari review. Petitioner had one year thereafter, or through January 9, 2012, to file his federal habeas petition. Accordingly, his Petition filed October 10, 2011 was timely.

## B. EXHAUSTION & PROCEDURAL DEFAULT

Respondents argue that Petitioner has failed to properly exhaust, and now has procedurally defaulted, his state remedies on Grounds 2, 3, 7 and 9.

### 1. Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c). When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp,* 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

**Proper Forum** - Ordinarily, "to exhaust one's state court remedies in Arizona, a

6

petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

**Fair Presentation** - To result in exhaustion, claims must not only be presented in the proper forum, but must be "fairly presented."  That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.  28 U.S.C. § 2254;  *Picard v. Connor,* 404 U.S. 270, 276-277 (1971).  A claim has been fairly presented to the state court if the petitioner has described both the operative facts and the federal legal theory on which the claim is based.  *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, *Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007)).

The Arizona habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing."  *Castillo v. McFadden*, 370 F.3d 882, 887 (9th Cir. 2004).  "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

Nonetheless, "a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue."

*Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).  But a drive-by-citation of a state case applying federal and state law is not sufficient.

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, as here, the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.

*Casey v. Moore*, 386 F.3d 896, 912 n. 13  (9th Cir. 2004).

**2. Application to Petitioner's Claims**

   **Ground 2 – Suppression** – For his Ground 2, Petitioner argues that the prosecution improperly suppressed evidence in the grand jury proceeding that there was a dispute among the police officers as to whether they were in pursuit of Petitioner at the time of the collision.  (Petition, Doc. 1 at physical page 7.)  Petitioner does not identify the constitutional provision or specific legal theory under which he is proceeding.

   Petitioner raised the same factual arguments in his Petition for Review in his PCR Proceeding, in "Issue 2."  (Exhibit J at 3-5.)  He identified the claim as asserting "the unconstitutional suppression of evidence by the state," and argued that the PCR court rejected the claim as failing to show "a denial of due process."  (*Id.* at 3.)  He concluded by arguing that "the prosecution engaged in misconduct that resulted in a denial of due process." (*Id.* at 5.)  However, Petitioner never made any reference to any federal law or constitutional provisions in this claim.

   Even had Petitioner specified he was proceeding under the federal (as opposed to the state's) due process guarantee, a mere reference to "due process" is not sufficient to fairly present a federal claim.   "It is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court."  *Gray v. Netherland*, 518 U.S. 152, 163 (1996).  *See also Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

   Petitioner cited only two cases in support of his claim to the state court:  *State v.*

8

*Roque*, 212 Ariz. 193, ¶ 152, 141 P.3d 368, 403 (2006), and *State v. Carreno-Maldonado*, 135 Wash. App. 77, 143 P.3d 343 (2006).  Neither citation was sufficient to alert the Arizona Court of Appeals to the federal nature of Petitioner's claim.

The *Roque* decision addressed several allegations of prosecutorial misconduct, but none addressed failure to disclose evidence in a grand jury proceeding (although one portion related to failure to disclose evidence to the defense).  Moreover, that decision did not reply upon federal law nor address any federal constitutional provisions.

*Carreno-Maldonado* was cited by Petitioner solely for the proposition that prosecutors could not "offer unsolicited information at sentencing," an assertion that is not part of the instant habeas claim.  (Exhibit J, PFR at 3.)

Accordingly, Petitioner failed to fairly present to the Arizona Court of Appeals any federal claim in connection with the prosecution's suppression of evidence before the grand jury, and his state remedies on this claim are unexhausted.

**<u>Ground 3 – Perjured Testimony</u>** – In his Ground 3, Petitioner argues that the prosecution engaged in misconduct when it "brought up perjured testimony from the alleged victims and officers."  (Petition, Doc. 1 at physical page 8.)  Presumably, Petitioner is objecting to statements by the prosecution concerning the disputed disturbance at the Yost home and related knife assaults, and the disputed allegations that Petitioner was being pursued by police at the time of the collision.  Again, Petitioner does not identify any particular federal theory for this claim.

Petitioner made this same factual argument to the Arizona Court of Appeals in "Issue 3" in his Petition for Review.  (Exhibit J at 5-7.)  Again, however, Petitioner merely asserted that he suffered a "constitutional violation" and that the prosecution's conduct "resulted in a denial of due process."  (*Id.* at 6.)  Again, Petitioner did not identify it as a denial of a federal due process guarantee.

The only authority cited by Petitioner was the Washington state case, *Carreno-Maldonado*.  That case relied upon federal law only for the proposition that a state may not breach a plea agreement.  135 Wash.App. at 87, 143 P.3d at 349 (citing *Santobello v.*

9

*New York*, 404 U.S. 257  (1971), etc.).

Accordingly, Petitioner failed to fairly raise to the Arizona Court of Appeals any federal claim in connection with the prosecution's use of perjured testimony, and his state remedies on this claim are unexhausted.

**Ground 7 – Involuntary Guilty Plea** – For his Ground 7, Petitioner argues that his plea was improperly induced by media statements about the case by the County Attorney, based upon the novelty of a death penalty request in a vehicular homicide case, thereby prejudicing potential jurors and the judge against Petitioner, and consequently forcing him to take a plea agreement.  (Petition, Doc. 1 at physical page 12.)   Petitioner again does not identify any specific federal legal theory.

Petitioner made this same factual argument to the Arizona Court of Appeals in "Issue 7" in his Petition for Review.  (Exhibit J at 9-10.)    However, he asserted no federal constitutional violation, and cited no federal law.

Petitioner did cite, in his petition for review to the Arizona Court of Appeals, to the Arizona case, *State v. Hamilton*, 142 Ariz. 91, 688 P.2d 983 (1984).

> The judge referred to *State v. Hamilton*, 142 Ariz. 91, 688 P.2d 983 (1984) and that says "a defendant must not tell the judge that his pleas is entered voluntary if it is not."

(*Id.* at 9.)   *Hamilton* cited and applied the Supreme Court's mandate in *Boykin v. Alabama*, 395 U.S. 238 (1969) that a guilty plea may only be taken after an affirmative, on the record, showing that it is intelligent and voluntary.

However, Petitioner cited *Hamilton* only in summarizing what the PCR judge had said in rejecting his claim. The PCR court wrote:

> Defendant has not presented a colorable claim that his plea was involuntary. *See State v. Hamilton*, 142 Ariz. 91, 688 P.2d 983 (1984). ("A Defendant must not tell the judge that his plea is entered into voluntarily if it is not.").

(Exhibit H, M.E. 11/4/08 at 2.)

Moreover, here (and in his PCR) Petitioner does not assert that the trial judge failed to adequately inquire about the voluntariness of his plea, the issue upon which the

*Hamilton* court relied upon *Boykin*. Rather, Petitioner simply seeks to assert that the plea was in fact not voluntary, due to the hostility of the pretrial climate. Neither *Hamilton* nor *Boykin* addressed such a claim.

Further, the specific portion of *Hamilton* referenced by the PCR Court and Petitioner was not based upon or drawn from *Boykin*, but was an explication by the Arizona Court of its reasons for being unswayed by newly minted claims of involuntariness in the face of a *Boykin* colloquy:

> A defendant must not tell the judge that his plea is entered into voluntarily if it is not. It is no excuse that appellant thought the judge might not be trustworthy. If we were to grant any type of relief on this ground, every intelligent defendant entering a plea would tell the trial judge that the plea was entered into voluntarily and then wait for imposition of the sentence; if the sentence imposed were more harsh than anticipated or desired, the defendant would claim he entered the plea involuntarily but could not tell the judge, fearing the judge could not be trusted. Such a sequence of events would make a mockery of our justice system and of course will not be allowed. It is also no excuse that appellant feared being returned to the Maricopa County Jail. If told about the threats, the judge could have ascertained if there really were any danger to appellant and, if so, could have arranged appropriate safety precautions. Both of these claims are foreclosed by the trial judge's *Boykin* questioning and appellant's responses at the time of the change of plea.

*Hamilton*, 142 Ariz. at 93, 688 P.2d at 985.

Accordingly, Petitioner failed to fairly raise to the Arizona Court of Appeals any federal claim that his plea was involuntary as a result of the pretrial climate, and his state remedies on this claim are unexhausted.

**Ground 9 – Unlawful Sentence** – In his Ground 9, Petitioner argues that the prosecution misrepresented the portion of the plea agreement regarding judicial fact finding of "enhancements" (but not "aggravating factors"), and whether Petitioner could be subjected to probation, in light of his being sentenced "without parole." Therefore, he argues the plea agreement was breached when he was sentenced based on aggravating factors and to probation. (Petitioner, Doc. 1 at physical page 14.) Petitioner again does not identify any specific federal legal theory.

Petitioner made this same factual argument to the Arizona Court of Appeals in

"Issue 9" in his Petition for Review.  (Exhibit J at 7-8.)   However, he asserted no federal constitutional violation, and cited no federal (or state) law.   Accordingly, Petitioner failed to fairly raise to the Arizona Court of Appeals any federal claim raised in Ground 9, and his state remedies on this claim are unexhausted.

**Summary** – Petitioner failed to fairly present to the state courts as federal claims his grounds for relief in Grounds 2, 3, 7 and 9.

### 3.  Procedural Default

Ordinarily, unexhausted claims are dismissed *without prejudice*.  *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).   However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal *with prejudice* of a procedurally barred or procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4.  (Answer, Doc. 10 at 7.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Accordingly, direct appeal is no longer available for review of  Petitioner's unexhausted claims. Moreover, as a pleading defendant, Petitioner had no right of direct appeal.  *See Summers v. Schriro,* 481 F.3d 710, 717 (9th Cir. 2007); and Ariz.R.Crim.P. 17.1(e) and 27.8(e).)

**Remedies by Post-Conviction Relief** - Petitioner can no longer seek review by a subsequent PCR Petition.

12

<u>Waiver Bar</u> - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding." Ariz.R.Crim.P. 32.2(a)(3).   Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments).   For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right." *Id.*   That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes* 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).   Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.[1]   None of Petitioner's unexhausted claims fit within those categories.

<u>Timeliness Bar</u> - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars.   Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."   *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for

---

[1] Some other types of claims addressed by the Arizona Courts in resolving the type of waiver required include: ineffective assistance (waived by omission), *Stewart,* 202 Ariz. at 450, 46 P.3d at 1071; right to be present at non-critical stages (waived by omission), *Swoopes,* 216Ariz. at 403, 166 P.3d at 958; improper withdrawal of plea offer (waived by omission), *State v. Spinosa*, 200 Ariz. 503, 29 P.3d 278 (App. 2001); double jeopardy (waived by omission), *State v. Stokes*, 2007 WL 5596552 (App. 10/16/07); illegal sentence (waived by omission), *State v. Brashier*, 2009 WL 794501 (App. 2009); judge conflict of interest (waived by omission), *State v. Westmiller*,  2008 WL 2651659 (App. 2008).

purposes of the rule).   That time has long since passed.

Exceptions - Rules 32.2 and  32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).  *See* Ariz. R. Crim. P.  32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P.  32.4(a) (exceptions to timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable to his claims.   Nor does it appears that such exceptions would apply.   The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence.   Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application.  Here, Petitioner has long ago asserted the facts underlying his unexhausted claims. Paragraph (f) has no application where the petitioner filed a timely notice of

14

post-conviction relief.   Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding.   Finally, paragraph (h), concerning claims of actual innocence, has no application to Petitioner's procedural claims.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

**4.  Summary Regarding Procedurally Defaulted Claims**

Petitioner failed to fairly present, and has now procedurally defaulted on the following claims:   Grounds 2 (Suppression re Pursuit), 3 (Perjured Testimony), 7 (Involuntary Plea), and 9 (Sentence).   Thus, these claims are precluded from habeas review absent cause and prejudice to avoid the bar.

**B.  INDEPENDENT AND ADEQUATE STATE GROUNDS**

In addition, Respondents argue that Grounds 1 (Ineffective Assistance re Remand), 2 (Suppression re Pursuit), and 8 (Self Incrimination) were procedurally barred by the state courts under an independent and adequate state waiver ground.

"[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin*, - - - U.S. - - -, 131 S.Ct. 1120, 1127 (2011).

**Ground 1 (Ineffectiveness re Remand)** - In his Ground 1, Petitioner argues that trial counsel was ineffective for failing to seek to remand his case to the grand jury. (Petition, Doc. 1 at physical page 6.)  Petitioner raised the facts of this claim to the PCR Court, but made no reference of any federal constitutional violations, nor did he cite any federal (or state) authority in support of the claim.  (Exhibit G, PCR. Pet., Exhibit #1, at

15

1.)   The PCR court rejected this claim on the basis that Petitioner failed to assert a "colorable claim."  (Exhibit H, M.E. 11/14/08 at 3.)

Petitioner raised the facts of this claim again to the Arizona Court of Appeals, this time citing federal law (Exhibit J, PFR at 12, *et seq.*).   The Arizona Court of Appeals summarily denied review.   Because the Arizona Court of Appeals issued a summary denial, the PCR court had the last reasoned decision, and its decision thus controls whether the claim was procedurally barred.

Respondents argue that the PCR court rejected this claim on independent and adequate state grounds when it found:

> In his Pro Per Petition, Defendant alleges various violations of his constitutional rights. Defendant claims errors related to the evidence presented to the Grand Jury. This claim is untimely. *See State V. Moody*, 208 Ariz. 424, 439-40,131,94. P.3d 1119, 1134-35 (2004) (challenges to Grand Jury's findings of probable cause must be made by motion followed by special action prior to trial).

(Exhibit H, M.E. 11/14/08 at 1.)   However, the PCR Court was there addressing a direct assault on the grand jury proceedings.   In the instant claim, Petitioner does not directly assault the grand jury proceedings, but instead asserts that trial counsel should have mounted such an assault by seeking remand.

Instead of rejecting the ineffective assistance claim as waived, the PCR Court rejected it as not "colorable," or in essence, that it was wholly without merit.

> Defendant's claims that claims [sic] his first attorney failed to interview officers and file a Motion to Remand the charges to the Grand Jury…. are not colorable."

(Exhibit H, M.E. 11/14/08 at 3.)   And, although Petitioner failed to raise the claim as a federal one, the PCR court explicitly addressed all of Petitioner's ineffective assistance of counsel claims as federal claims under *Strickland v. Washington*, 466 U.S. 668 (1984). (*Id.* at 2.)

Thus, rather than being rejected under an independent and adequate state ground, Petitioner's claim in Ground 1 was treated as a federal claim and rejected on its merits. A state court's actual consideration of a claim satisfies exhaustion. *See Sandstrom v.*

*Butterworth*, 738 F.2d 1200, 1206 (11th Cir. 1984) ("[t]here is no better evidence of exhaustion than a state court's actual consideration of the relevant constitutional issue"); *see also Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir.1990) (state court's *sua sponte* consideration of an issue satisfies exhaustion).

Therefore, this Court must address the merits of the claim.

**Ground 2 (Suppression)** – Respondents also argue with regard to Ground 2 that to "the extent that Petitioner is again challenging the grand jury proceedings, the trial court found that claim precluded under state law." (Answer, Doc. 10 at 9.) However, as discussed hereinabove, Petitioner's federal claim in Ground 2 was never asserted to the state courts. Accordingly, the waiver bar applied by the PCR court would have applied only to his related state law claims, and would not have been applied to the un-presented federal claims.

**Ground 8 (Self-Incrimination)** – For his Ground Eight, Petitioner argues that he had a right against self-incrimination under the Arizona Constitution, which was violated when his vulgar remark to a police officer was used against him at sentencing. (Petition, Doc. 1 at physical page 13.)

Petitioner presented the substance of this claim in his PCR Petition, arguing that the "officer violated my right to self incrimination by not advising me of my *Miranda* rights at the time of the statement." (Exhibit G, PCR Pet., Exhibit #1 at 10.) The PCR court ruled:

> Defendant further contends his right against self-incrimination was violated by the inclusion of a statement in the presentence report. Defendant was required to object to the contents of the presentence report prior to sentencing. See Ariz. R. Crim. P. 26.8…Regardless, Defendant has not demonstrated a violation of his constitutional right against self-incrimination under the Fifth Amendment. Defendant has not demonstrated that he was in custody at the time of the statement or that his statement was in response to an interrogation. *See In re Jorge D.*, 202 Ariz. 277,43 P.3d 605. (App. 2002) (Police officers are required to give *Miranda* warnings only when a Defendant is undergoing custodial interrogation).

(Exhibit H, M.E. 11/14/08 at 2.)

17

Petitioner again presented the claim in "Issue 8" in his Petition for Review to the Arizona Court of Appeals, again referencing "*Miranda*." (Exhibit J at 10.) And, the Arizona Court of Appeals summarily denied the claim. (Exhibit K, Order 2/8/10.) Thus, in the last reasoned decision (that of the PCR court), this claim was rejected on the basis of Arizona Rule of Criminal Procedure 26.8. Subsection (a) of that rule provides:

> Prior to the day of the presentencing hearing, each party shall notify the court and all other parties of any objection it has to the contents of any report prepared under Rules 26.4, 26.5 or 26.7(c).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit specifically addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Bennett*, 322 F.3d at 584, 585. Petitioner makes no argument and asserts no facts to show that Arizona's waiver rule on objections to the presentence report is not independent and adequate.

It is true that the PCR court also reached the merits of the claim, holding that *Miranda* did not apply because Petitioner was not undergoing custodial interrogation. However, the state court may reach "the merits of a federal claim in an alternative holding" and still avoid habeas review, "as long as the state court explicitly invokes a state procedural bar rule." *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989). Here, the state court explicitly invoked Ariz.R.Crim.Proc. 26.8.

Accordingly, the undersigned finds that Petitioner's Ground 8 was procedurally barred on an independent and adequate state ground, and absent cause and prejudice it must be dismissed with prejudice.

18

**D.  CAUSE AND PREJUDICE**

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default.  *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting *Reed*, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).  The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Here, Petitioner does not proffer any good cause to excuse his failures to exhaust and procedural bars.  The undersigned finds none.

**Prejudice** -   Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

**Actual Innocence** - The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice." *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the

conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added). Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence. *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.*, §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.). The Ninth Circuit has expressly limited it to claims of actual innocence. *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008). Petitioner makes no claim of his actual innocence, and the undersigned finds no basis to conclude that Petitioner was actually innocent.

## E. MERITS OF INEFFECTIVE ASSISTANCE CLAIMS

### 1. Applicable Standards

#### a. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, Petitioner must show: (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id.* at 697.

**Deficient Performance** - A deficient performance is one in which counsel's errors were so great he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Iaea v. Sunn*, 800 F.2d 861, 864 (9th Cir. 1986). An objective standard applies to proving such ineffectiveness, and requires a petitioner to demonstrate that counsel's actions were "outside the wide range of professionally competent assistance." *United States v. Houtcens*, 926 F.2d 824, 828 (9th Cir. 1991)(quoting *Strickland*, 466 U.S. at 687-90). The reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

Moreover, tactical decisions with which a defendant disagrees cannot form the basis for a claim of ineffective assistance of counsel. *Morris v. California*, 966 F.2d 448, 456 (9th Cir. 1991). "Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation." *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980). Rather, Petitioner must establish that the tactic was "outside the wide range of professionally competent assistance." *Houtcens*, 926 F.2d at 828.

And, it is clear that the failure to take futile action can never be deficient performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996). "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

**<u>Prejudice</u>** - To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In the context of a guilty plea, the defendant must prove he was prejudiced from counsel's ineffectiveness by demonstrating a reasonable probability that but for his attorney's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. at 58-59; *Strickland*, 466 U.S. at 694; *United States v. Keller*, 902 F.2d 1391, 1394 (9th Cir. 1990). The defendant must show "that but for counsel's errors, he would either have gone to trial or received a better plea bargain." *U.S. v. Howard*, 381 F.3d 873, 882 (9th Cir. 2004).

The Court must assess the circumstances surrounding the case to determine if the petitioner's allegation that he would have proceeded to trial is plausible. *See Keller*, 902 F.2d at 1394-95 (petitioner failed to show prejudice because he entered plea as alternative to long trial, possible conviction on more serious charges and a longer sentence; additional information about parole eligibility was unlikely to affect his decision).

21

### b.  Habeas Standards

**Federal Law Determinations** - For state prisoners, habeas relief is only warranted if the state court's decision of a matter was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1).

The Supreme Court has instructed that a state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).

"A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Anthony v. Cambra*, 236 F.3d 568, 578 (9th Cir. 2000).

**Factual Determinations** - Federal courts are also authorized to grant habeas relief to state prisoners in cases where the state-court decision  "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."  *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

Moreover, a state prisoner is not free to attempt to retry the facts of his case in the federal courts.  There is a well-established presumption of correctness of state court findings of fact.  This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear

22

and convincing evidence."

Finally, a state prisoner may not introduce into the habeas court new evidence if he has failed to develop the factual basis for his claim in the state proceedings. 28 U.S.C. § 2254 (e)(2) provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
> (A) the claim relies on--
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

## 2.  Ground 1 – Ineffective Assistance re Remand

In his Ground 1, Petitioner argues that trial counsel was ineffective for failing to seek to remand his case to the grand jury.  Petitioner contends that an adequate investigation would have revealed that errors by police in their pursuit of Petitioner, disputed evidence as to whether there was a pursuit at all, and that "officers didn't activate their emergency lights and sirens." Purportedly, one officer commented: "the suspect driver could not have felt he was being pursued."  Petitioner contends that his last attorney, Cantor, told him the case had been overcharged, but that Petitioner's first attorney had let the time to challenge the charges expire.  (Petition, Doc. 1 at physical page 6.)

The Indictment's charge of First Degree Murder was founded upon Ariz. Rev. Stat. §  13-1105(A)(2), which defined first degree murder as "caus[ing] the death of any person" "in the course of and in furtherance of the offense or immediate flight from the offense" of "unlawful flight from a pursing law enforcement vehicle under § 28-622.01." Section 28-622.01 requires for a finding of such unlawful flight that the pursuing law enforcement vehicle be operated "in the manner described in § 28-624, subsection C."

23

Section 28-624(C) in turn requires that:

> the driver of the vehicle while in motion sounds an audible signal by bell, siren or exhaust whistle as reasonably necessary and if the vehicle is equipped with at least one lighted lamp displaying a red or red and blue light or lens visible under normal atmospheric conditions from a distance of five hundred feet to the front of the vehicle, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a red or red and blue light or lens visible from in front of the vehicle.

*See also State v. Martinez*, 229 Ariz. 546, 278 P.3d 324 (App. Div. 1, 2012) (marked police vehicle need not display any lights or siren for flight to be unlawful under Ariz. Rev. Stat. § 28-624(C)).

The PCR court rejected this claim on the merits, on the basis that Petitioner failed to assert a "colorable claim."  (Exhibit H, M.E. 11/14/08 at 3.)  The PCR Court did not otherwise provide any reasoning for its decision.

Because Respondents deemed this claim procedurally barred, they did not address the merits. Nonetheless, the undersigned finds the claim plainly without merit because Petitioner has failed to meet his burden of proving either deficient performance or prejudice in this regard.

In reaching this conclusion, the undersigned presumes for purposes of this report and recommendation that an investigation by counsel would have revealed the evidence suggested by Petitioner, and that the evidence would have been convincing that Petitioner was not being actively pursued by police officers at the time of the accident, as required under Ariz. Rev. Stat. § 28-622.01 to support the felony murder charge. Petitioner's claim is nonetheless without merit for at least two reasons.

<u>Waiver</u> - First, Petitioner waived any claims about the grand jury proceedings by pleading guilty.  "It is well established in Arizona that an appellant waives any challenges to non-jurisdictional defects in the trial court proceedings when he enters a valid guilty plea."  *State v. Reed*, 121 Ariz. 547, 548, 592 P.2d 381, 382 (Ariz.App. 1979).  That extends to challenges to the grand jury proceedings.  *Id.*

It also extends to claims of ineffective assistance as to grand jury proceedings. In

*State v. Quick*, 177 Ariz. 314, 868 P.2d 327 (App. Div. 2,1993), the Arizona Court of Appeals rejected as waived by a guilty plea a claim of ineffective assistance based upon failure to seek remand to the grand jury.

> Appellant concedes that the entry of a plea waives all non-jurisdictional defects, but, he claims that this rule does not apply to a claim of ineffective assistance in entering a plea. Appellant fails to see the distinction between counsel who is ineffective in connection with matters directly relating to the entry of a guilty plea and allegedly deficient performance as to other aspects of the representation. Under the circumstances of this case, we believe the claim has been waived.

177 Ariz. at 316, 868 P.2d at 329 (citations omitted).

Moreover, Petitioner admits in his Petition that he was aware of the disputed evidence at the time of preparing for trial, and discussed it with counsel. (Petition Doc. 1 at physical page 6 ("we were going over trial strategy and he advise me this was …way over charged due to the lack of evidence").  Thus, any deficiency in his first trial counsel's investigation had been cured, and the knowing and voluntary nature of his subsequent plea was not affected by it.

<u>No Right to Remand</u> - Second, Petitioner fails to show that the disputed evidence of an active pursuit entitled him to a remand to the grand jury.  In *State ex rel. Collins v. Kamin*, 151 Ariz. 70, 725 P.2d 1104 (1986), the Arizona Supreme Court explained the limitations on challenges to a grand jury's determination:

> A grand jury's duty is not to find guilt beyond a reasonable doubt, or to acquit. Its duty is to determine "whether probable cause exists to believe that a crime has been committed and that the individual being investigated was the one who committed it."
>
> The trial judge here erred by remanding the case for a new finding of probable cause. He was in error because he examined the quantity and quality of evidence before the grand jury. By weighing the evidence presented to the grand jury, he engaged in a procedure beyond a trial court's authority.
>
> Relying on extensive federal authority, this court has decided previously that trial judges should not weigh the evidence already considered by grand juries. It is a "long established rule that an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence."
>
> * * *
>
> A defendant may only challenge the grand jury's finding of probable cause on a limited number of grounds. These grounds are

1
2
that an insufficient number of grand jurors concurred in the indictment, or that the defendant was denied a substantial procedural right. The insufficiency of the evidence is not a valid ground for challenge to the finding of the grand jury.

3   151 Ariz. at 71-72, 725 P.2d at 1105-06 (citations omitted).

4          Moreover, Arizona Rule of Criminal Procedure 12.9(a) explicitly limits

5   challenges to a grand jury indictment to those "alleging that the defendant was denied a

6   substantial procedural right, or that an insufficient number of qualified grand jurors

7   concurred in the finding of the indictment."  Petitioner's Ground 1 makes no allegation

8   that there were such procedural irregularities in the grand jury proceeding.

9          At best, Petitioner's allegations suggest a deficiency in the evidence before the

10  grand jury.  Any motion to remand on that basis would have been doomed under *Kamin*

11  and the Arizona Rules of Criminal Procedure.  Thus, Petitioner can establish neither

12  deficient performance nor prejudice from his counsel's failure to file a timely motion to

13  remand to the grand jury.

14         Accordingly, Petitioner's Ground 1 is without merit and must be denied.

15

16  **3.  Ground 4 – Ineffective Assistance re Interviews**

17         For his Ground 4, Petitioner argues that his first two trial attorneys were

18  ineffective for failing to conduct interviews of Elizabeth Youst before her death, and

19  knife assault victims Dustin Magnuson and Darren Shuck before they became

20  uncooperative, and "multiple alibi witnesses that lived in the apartment complex."

21  Recognizing that the related charges were dismissed as part of his plea bargain,

22  Petitioner nonetheless contends these interviews would have resulted in evidence that,

23  rather than assaulting these victims, he had been beaten up and was running for his life,

24  and not from the police, preventing the prosecution from arguing these assaults and the

25  pursuit at sentencing.

26         Petitioner did not reference the availability of "multiple alibi witnesses" in his

27  PCR Petition. (Exhibit G, PCR Pet. Exhibit #1 at 5-6.)  While new factual allegations do

28  not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the

1  legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260

2  (1986). *See also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994).  It seems to the

3  undersigned that the addition of "multiple" new witnesses to a specific list of victims

4  works a significant shift, and amounts to a new claim.  Nonetheless, Respondents do not

5  assert that the claim is unexhausted.  Because the undersigned finds the claim to be

6  wholly without merit, it will be addressed on the merits.  *See* 28 U.S.C. § 2254(b)(2)

7  ("An application for a writ of habeas corpus may be denied on the merits,

8  notwithstanding the failure of the applicant to exhaust the remedies available in the

9  courts of the State.").

10      The PCR court denied the portion of this claim related to the victims, finding:

11  "Defendant's claims that… his first two attorneys failed to interview 'the alleged victims

12  of the Aggravated Assaults in the apartment prior to the alleged pursuit,'…[is] not

13  colorable."  (Exhibit H, M.E. 11/14/08 at 3.)

14      Respondents argue that Petitioner fails to show what impact the purported

15  evidence would have had on the proceedings, or that he would not have plead guilty but

16  for his counsels' errors.

17      Petitioner offers only pure speculation that these witnesses, had they been

18  interviewed, would have exonerated Petitioner from the allegations of the incidents at the

19  Youst apartment.   A petitioner may not simply speculate about what a witness'

20  testimony, but must adduce evidence to show what it would have been.  *Grisby v.*

21  *Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).  "[E]vidence about the testimony of a

22  putative witness must generally be presented in the form of actual testimony by the

23  witness or on affidavit. A defendant cannot simply state that the testimony would have

24  been favorable; self-serving speculation will not sustain an ineffective assistance claim."

25  *U.S. v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)..

26      Respondents argue that Petitioner fails to show that this would have kept him

27  from pleading guilty.  "As a general rule, one who voluntarily and intelligently pleads

28  guilty to a criminal charge may not subsequently seek federal habeas corpus relief on the

27

basis of pre-plea constitutional violations." *Hudson v. Moran*, 760 F.2d 1027, 1029 (9th Cir.), *cert. denied*, 474 U.S. 981 (1985).   However, Petitioner does not attack the validity of his conviction in this ground, but his sentence.  Claims of ineffectiveness arising after entry of the plea, for example in the course of sentencing, on appeal, etc., are not waived by a guilty plea.  *See e.g. U.S. v. Reyes-Platero*, 224 F.3d 1112 (9th Cir. 2000).   Thus his burden on the prejudice prong is to show that his sentence would have been different.

Such witnesses would have been subject to impeachment with their original statements to police, and whatever other evidence underlay the indictment or subsequently developed.   Petitioner proffers nothing to explain why, given the preponderance of  the evidence standard agreed to  by him for sentencing, that the trial judge would not have been just as likely (if not more likely) to believe their original statements to police (assuming they would not offer exonerating statements).

Petitioner has failed to meet his burden of proving deficient performance and prejudice, and this ground is without merit.

**4.  Ground 5 – Ineffective Assistance re Psychological Problems**

For his Ground 5 for relief, Petitioner asserts that he had psychological problems as a result of the beating he received as part of the incident.  He argues that he was wrongly advised by trial counsel Randall Craig and mitigation specialist MaryAnn Brewer to never admit that he had psychological problems because it would be used against him at sentencing.   As a result, he was not forthright during psychological evaluations during his representation with Craig, and his final attorney, David Cantor. As a result, his decision to plead guilty and his sentence were affected.  (Petition, Doc. 1 at physical page 10.)

The PCR Court found that Petitioner's claim that "counsel misinformed him relating to psychological testing [is] not colorable."  (Exhibit H, M.E. 11/14/08 at 3.)

Respondents argue that Petitioner fails to overcome the presumption of

effectiveness, fails to show the advice was not a reasonable strategic decision, does not show any prejudice, and does not allege that this affected his decision to plead guilty. (Answer, Doc. 10 at 18.)

As to the latter, Petitioner alleges that evidence of a psychological condition "would have been positive…if I would have gone to trial," and that the advice "affected my plea." (Petition, Doc. 1 at physical page 10.)   Liberally construed, this is an allegation that his decision to plead guilty was affected by counsel's actions.

Petitioner does fail, however, to explain how his purported psychological problems would have been beneficial at trial or sentencing.   He describes them as "nightmares, hearing voices, and being scared of things."  (Petition, Doc. 1 at physical page 10.)   He does not assert some longstanding mental illness, but alleges that the problems "occurred from the assault when I was beat up in the apartment."  (*Id.*)  He does not suggest that he has ever been diagnosed with any "mental illness" other than by himself, or that he has required treatment.

Further, Petitioner does not explain how his symptoms impacted his culpability for the homicide.   For example, he does not allege that he was experiencing hallucinations or other symptoms at the time he was driving the wrong way down the freeway and collided with the victim.   Indeed, at least the nightmare symptoms would not have yet occurred.   And, having resulted from the alleged beating, the symptoms would not have explained Petitioner's substance abuse that day.

Nor does Petitioner explain how the information would have been useful at sentencing.   He hasn't shown how it would have lessened his culpability, or otherwise altered the judge's perception of the nature or quality of his prior conduct.   Nor does Petitioner suggest how it would have positively altered the judge's perception of Petitioner's potential for rehabilitation.

To the contrary, counsel could have reasonably anticipated that information of a serious mental illness would have suggested a decreased potential for rehabilitation, both as to substance abuse and criminal behavior.   Moreover, but for the allegation that he

was "hearing voices," the symptoms described by Petitioner are common place for incarcerated persons, and could easily have been seen as normal reactions to Petitioner's conduct and its consequences.

In short, as argued by Respondents, Petitioner fails to overcome the presumption that counsel's advice was reasonable strategy, or to show that his guilty plea or sentencing were affected by Mr. Craig's advice.

Finally, Petitioner does not explain why, despite having fired Mr. Craig and retained Mr. Cantor, he continued to rely upon Mr. Craig's advice on this issue, and thus failed to disclose his mental condition to the attorney whose advice he chose to rely upon to plead guilty, and who he depended upon to argue his case at sentencing.  Without some extraordinary explanation beyond "Mr. Craig told me not to tell anyone," the causative chain between that advice and Petitioner's conviction and sentence was broken when Petitioner obtained new counsel.

Petitioner's Ground 5 is without merit, and must be denied.

**5.  Ground 6 – Ineffective Assistance re Lesser Included Offenses**

For his Ground 6 for relief, Petitioner argues that his second attorney, Mr. Craig, wrongly advised him that if he went to trial on the first degree murder charge, he could still be found guilty of a lesser included offense of second degree murder.  He alleges that had he known that there were no lesser included offenses to first degree murder, and that the state's failure to prove the elements of that offense would have left him free of any conviction on those events, he would have proceeded to trial. (Petition, Doc. 1 at physical page 11.)

Any such advice, if given would have been wrong.[2]  Under Arizona law, a charge of first degree murder arising from an unlawful flight is a form of felony murder.  *See*

---

[2] There was some discussion at the PCR hearing about the potential for the charges to be reduced (Exhibit S, R.T. 11/25/08 at 30-31), which what was ultimately accomplished by the plea agreement.  Petitioner's allegations are specific that his conversation with counsel related not to a reduction of the charges, but an alternative, lesser included offense, verdict at trial.

Ariz. Rev. Stat. §  13-1105(a)(2).  "It is well established that no lesser included offense to felony murder exists because the *mens rea* necessary to satisfy the premeditation element of first degree murder is supplied by the specific intent required for the felony." *State v. LaGrand*, 153 Ariz. 21, 30, 734 P.2d 563, 572 (Ariz. 1987).  In contrast, second degree murder  requires proof of "criminal negligence," Ariz. Rev. Stat. §  13-1102(A), or "intentionally," "knowingly", or  "recklessly," Ariz. Rev. Stat. §  13-11-4(A), and manslaughter requires proof of at least recklessness, Ariz. Rev. Stat. §  13-1103(A).

The PCR court held an evidentiary hearing on this claim on November 25, 2008. Petitioner testified on his own behalf.  The state called Mr. Craig. The PCR court took the matter under advisement and then later that day summarized the evidence and ruled as follows:

> The Defendant testified that he recalls a telephone conversation with his second attorney, Randall Craig, at which time Mr. Craig told him that he could be convicted of lessor included offenses should be choose to go to trial. The Defendant does not recall when the conversation took place or the specific circumstances of the conversation.
>
> The Defendant testifies that this conversation with Mr. Craig played a part in his accepting the Plea Agreement. The Defendant did not testify that he would not have accepted the plea offer but for his belief that he could be convicted of a lessor included offense based on this conversation with Mr. Craig.
>
> Mr. Craig testified that he did not recall such a conversation taking place with the Defendant. Mr. Craig testified that he had no doubt in his mind that he would not have advised the Defendant that there were lessor included offenses to felony murder.
>
> THE COURT FINDS the Defendant has failed to meet his burden of proof. Mr. Craig's testimony re: this issue weighed more heavily with the Court than the testimony of the Defendant. The Defendant did not prove by a preponderance of the evidence that he was given inaccurate legal advice by Mr. Craig. Nor did not Defendant prove that he would not have entered the Plea Agreement but for the inaccurate legal advice. The Defendant has failed to meet either prong of *Strickland v. Washington*, 466 U. S. 668 (1984).

(Exhibit I, M.E. 11/25/08 at 3.)

Respondents argue that the PCR court's credibility determination is a factual finding entitled to a presumption of correctness, and that Petitioner has failed to show an unreasonable application of *Strickland*.  (Answer, Doc. 10 at 19-20.)

Indeed, the PCR court did make factual findings that Craig was more credible

1   than Petitioner, that Petitioner failed to prove he received inaccurate advice, and that
2   Petitioner had not asserted he would not have plead guilty but for the advice.  Petitioner
3   offers nothing to overcome the presumption of correctness that attaches to those
4   findings.

5          At best, Petitioner offers his own testimony, and a suggestion that this Court
6   obtain the "jail phone conversations." (Petition, Doc. 1 at physical page 11.)  The former
7   was rejected by the PCR court's unassailed credibility determination. Indeed, Petitioner's
8   bias and inability to recall details of the conversation suggest a lack of credibility.

9          The latter, the jail phone records, would produce nothing.  As a call between a
10  defendant and his attorney, the only records that would be expected to be maintained
11  would be the occurrence of phone conversations, and not the substance of the
12  conversations which would be subject to attorney-client privilege.  Craig did not testify
13  there were no phone conversations between he and Petitioner.

14         Moreover, Petitioner fails to show why such records were not produced to the
15  PCR court. Accordingly, he may not now seek to introduce this previously available
16  evidence.  28 U.S.C. § 2254(e)(2).

17         Moreover, Petitioner does not explain why, despite having fired Mr. Craig and
18  retained Mr. Cantor, he continued to rely upon Mr. Craig's advice on this issue.
19  Petitioner does not suggest that Mr. Cantor repeated the defective advice, nor that he
20  failed to correct it upon being questioned by Petitioner on the matter. Petitioner does not
21  explain why the causative chain between advice by Craig and Petitioner's conviction was
22  not broken when Petitioner obtained new counsel who represented him for some nine
23  months prior to his plea, and who advised him in the course of considering and entering
24  the plea.

25         Further, Petitioner obtained substantial benefits as a result of his plea, not the least
26  of which was avoiding exposure to the death penalty.

27         Based on the foregoing, even if Petitioner alleged that but for counsel's advice he
28  would not have plead guilty, the undersigned would not find that allegation credible.

32

Petitioner fails to show that the PCR court's rejection of this claim was an unreasonable determination of the facts, or an unreasonable application of or contrary to *Strickland*.   Nor does he proffer clear and convincing evidence sufficient to overcome the presumption of correctness that attaches to the PCR court's factual determinations. Accordingly, this claim must be denied.

## F.  SUMMARY

Petitioner has failed to properly exhaust and procedurally defaulted the claims in Grounds 2 (Suppression re Pursuit), 3 (Perjured Testimony), 7 (Involuntary Plea), and 9 (Sentence).  In addition the claims in Ground 8 (Self Incrimination) were procedurally barred.  Petitioner has not shown cause and prejudice or actual innocence to avoid the effect of those procedural defaults and procedural bar, and these grounds for relief must be dismissed with prejudice.

Petitioners ineffective assistance claims in Grounds 1 (re Remand), 4 (re Interviews), 5 (re Psychological Problems) and 6 (re Lesser Included Offenses) are without merit, and must be denied.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being  resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits.

To the extent that Petitioner's claims are rejected on procedural grounds, under the reasoning set forth herein, the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling."

To the extent that Petitioner's claims are rejected on the merits, under the reasoning set forth herein, the constitutional claims are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

# V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Grounds 2, 3, 7, 8 and 9 of the Petitioner's Petition for Writ of Habeas Corpus, filed October 11, 2011 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

34

**IT IS FURTHER RECOMMENDED** that the remainder of Petitioner's Petition for Writ of Habeas Corpus, filed October 11, 2011 (Doc. 1), including Grounds 1, 3, 4, 5 and 6, be **DENIED**.

**IT IS FURTHER RECOMMENDED** that to the extent the reasoning of this Report & Recommendation is adopted, that a certificate of appealability **BE DENIED**.


## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).


Dated: August 24, 2012

11-1976r RR 12 08 16 on HC.docx

James F. Metcalf
United States Magistrate Judge

35